**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RAFAEL MORALES-RODRIGUEZ<br><br>Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Respondent | Civil No. 07-2131 (SEC) |

**OPINION AND ORDER**

Pending before this Court is Petitioner Rafael Morales-Rodriguez's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Docket # 1. Petitioner further moves the Court to grant an evidentiary hearing. The Government opposed (Docket # 9), and Petitioner replied (Docket #13). After reviewing the filings, and the applicable law, Petitioner's motion is **DENIED**.

**Factual and Procedural Background**

On May 12, 2004, a jury found Petitioner guilty of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371 (Count One); mail fraud, in violation of 18 U.S.C. § 1341 and 1342 (Counts Three through Ten); embezzlement of labor union funds, in violation of 18 U.S.C. § 2 and 29 U.S.C. § 501(c) (Count Eleven); embezzlement of labor union funds, in violation of 29 U.S.C. § 501(c) (Count Twelve); structuring of monetary transactions, in violation of 31 U.S.C. § 5324(3) and § 5322(b) and 18 U.S.C. § 2 (Count Thirteen); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Crim. No. 03-216 (SEC), Docket # 83.This Court sentenced Petitioner on September 24, 2004 to one hundred twenty-one (121) months in prison as to Counts Three through Ten, Thirteen, and

Fourteen as well as five (5) years as to Counts One, Eleven, and Twelve, to be served concurrently with each other. Crim. No. 03-216 (SEC), Docket #121.

The following facts gave rise to Prisoner's conviction. During the period of 1992-2003, Petitioner was Vice-President of Frente Unido de Policias Organizados ("FUPO") and Jose De Jesus-Serrano ("De Jesus") was President. FUPO was a non-profit organization which aimed to provide better working conditions and salaries for its members, as well as to provide them with legal representation should the need arise. Membership was open to police officers and security guards. Approximately in the year 2000, members began to complain that they were not receiving the promised services, including disability benefits and a $2000 death benefit for widows. Although at least one area director complained to De Jesus and Morales, the situation persisted. See United States v. Morales-Rodriguez, 467 F.3d 1, 5-7 (1st Cir. 2006).

It was eventually discovered that Morales and De Jesus were issuing checks made out to themselves from FUPO's Banco Popular account and using them for personal expenses. Morales would deposit checks made out to FUPO at First Bank each week, which cleared immediately, after which he would purchase a manager's check made out to FUPO for part of the deposit amount. He would then ask the bank to issue a check made out to "cash" for the remainder and cash it; the amount of each check never exceeded $10,000 even though Morales would issue several checks to himself on the same day. It was estimated that the value of these checks totaled over one million dollars over the course of three years. Id.

On August 12, 2003, an Indictment was issued against Petitioner alleging that he conspired with De Jesus to embezzle money from FUPO using the U.S. Postal Service. Furthermore, the Indictment charged that FUPO was a Labor Organization engaged in an industry affecting commerce, that Petitioner and De Jesus extracted money from FUPO and structured monetary transactions that prevented Banco Popular de Puerto Rico from filing the necessary cash transaction report (CTR), and that they conspired to commit money

laundering with this money. A warrant was issued and Petitioner was arrested on that same day, but was later released on a $100,000 bond.

A six-day jury trial was held and, on May 14, 2004, Petitioner was found guilty of all but one of the charges. Petitioner timely filed an appeal on October 4, 2004 and, on May 19, 2006, the United States Court of Appeals for the First Circuit affirmed Petitioner's sentence and conviction in its entirety. U.S. v. Morales-Rodriguez, 467 F.3d 1, 5-16 (1st Cir. 2006). Petitioner's request for a Writ of *Certiorari* to the United States Supreme Court was denied. Morales-Rodriguez v. United States, 549 U.S. 1068 (2006).

Petitioner now seeks relief under 28 U.S.C. § 2255 alleging that counsel failed: (1) to advise Petitioner that "willfulness" was no longer needed to be proven as an element of the crime; (2) to allow Petitioner to testify on his own behalf during trial; (3) to review exculpatory discovery presented by the Government; (4) to argue, on appeal, that Petitioner's sentence violated the principles established in U.S. v. Booker; (5) to present prepared witnesses; (6) to object to witness testimony obtained under intimidation; (7) to advise him about the application of the federal sentencing guidelines; and (8) to present, on appeal, that the court lacked jurisdiction over FUPO. Docket #1.

**Standard of Review**

Section 2255 of Title 28 of the United States Code provides that a prisoner may vacate his sentence when said sentence was imposed in violation of the Constitution or laws of the United States, among other reasons. A federal district court must grant an evidentiary hearing to elucidate Petitioner's claims unless the record and evidence "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The same court may forego an evidentiary hearing when "the movant's allegations, even if true, do not entitle him to relief, or [when] the movant's allegations 'need not be accepted as true because they state conclusions of facts, contradict the record, or are inherently incredible.'" David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (citing United States v. McGill, 11 F.3d 223, 225-6 (1st Cir. 1993)).

The petitioner bears the burden of establishing, by a preponderance of the evidence, that he is entitled to relief. United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

**Applicable Law and Analysis**

Petitioner sets forth numerous alleged errors committed by his trial and appellate counsel, which in turn supposedly deprived him of his right to effective assistance of counsel. The Sixth Amendment of the Constitution of the United States provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to...have the Assistance of Counsel for his defence (sic)." U.S. Const. amend. VI. Such assistance contemplates more than the mere physical presence of a lawyer during trial; it protects the fundamental right of the accused to have a fair trial by ensuring that he has "effective assistance." Strickland v. Washington, 466 U.S. 668, 686 (1984). In other words, the benchmark for judging any claim of ineffectiveness of counsel must be whether counsel's conduct so undermined proper functioning of adversarial process that trial cannot be relied on as having produced a just result. Id.

When a convicted defendant alleges that the criminal proceeding against him was invalid due to the ineffective assistance of counsel, he must meet the two-part test established by the United States Supreme Court in Strickland. Under this test, the defendant must show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (citing Smiley v. Mahoney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland, 466 U.S. at 684)).Thus Strickland also requires a showing that counsel's deficient performance or error effectively prejudiced the defendant. Id. at 700.

Regarding the first part of the test, the Supreme Court has stated that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Therefore, the defendant bears the burden of overcoming the presumption

that the challenged action "might be considered sound strategy." Strickland at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, even if a criminal defendant overcomes this rather formidable obstacle, his ineffective assistance claim will not prosper unless he can also establish the second prong of the test, *i.e.*, prejudice. Id. at 700. However, the Court need not address both prongs of the test mentioned above if it is satisfied that the defendant cannot establish wither that his counsel was deficient or that said deficiency prejudiced him. Id. at 697. Consequently, a court's evaluation of counsel's performance must be highly deferential, as "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction of the adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 691. In sum, the court must avoid rendering judgment based on the distorting effects of hindsight. Id.

It is well-settled that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." Singleton v. U.S., 26 F.3d 233, 240 (1st Cir. 1994) (citing Dirring v. U.S., 370 F.2d 862, 864 (1st Cir. 1967)). On this front, the Supreme Court has held that "general rule" is that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). This heightened showing comports with this district's well established rule that "§ 2255 is not a substitute for direct appeal" Knight v. U.S., 37 F.3d 769, 772 (1994); see also Stone v. Powell, 428 U.S. 465, 478 n.10 (finding that there has been no change in the established rule with respect to nonconstitutional claims. The writ of habeas corpus and its federal counterpart, 28 U.S.C. s. 2255, 'will not be allowed to do service for an appeal.'") (citing Sunal v. Large, 332 U.S. 174, 178 (1947)). Thus, any issue seen on direct appeal by the First Circuit, relating to Crim. No. 03-216 (SEC), is precluded from being considered by this Court through the use of a Section 2255 motion. See id. Non-constitutional claims not raised on direct appeal are likewise precluded "absent exceptional

circumstances." <u>Knight v. U.S.</u>, 37 F.3d at 772; <u>see also</u> <u>Singleton</u>, 26 F.3d at 239 (deeming petitioner's claim "defaulted" when "it was neither raised before the trial court nor on direct appeal"); <u>Argencourt v. United States</u>, 78 F.3d 14, 16 n.1 (1st Cir. 1996) (rejecting arguments "not raised in the district court").

Upon reviewing the First Circuit's decision affirming Petitioner's conviction, we note that the following arguments were set forth by Petitioner's counsel on appeal, and rejected by the Court: the trial court's alleged lack of jurisdiction over FUPO, <u>Morales-Rodriguez</u>, 467 F.3d at 9, the sufficiency of the evidence (<u>id.</u> at 7-14), and alleged exculpatory evidence that the Government failed to produce (<u>id.</u> at 14-16). As such, Petitioner cannot re-argue said claims under the guise of ineffective assistance of counsel.

Since, pursuant to <u>Strickland</u>, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," <u>Strickland</u> at 690, we will address each of Petitioner's remaining allegations in turn.

1) *Failure to advise Petitioner that "willfulness" was no longer an element of the charged offense*

As stated previously, in order for a claim of ineffective assistance of counsel to prosper, a convicted defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that this deficient performance prejudiced him. <u>Strickland</u> at 684. The Sixth Amendment does not guarantee "letter perfect defense or successful defense;" instead, the standard is for "reasonably effective assistance." <u>U.S. v. Natanel</u>, 938 F.2d 302, 309-10 (1st Cir. 1991). Counsel does, however, have a duty to carry out an investigation when deliberating strategy:

> ...strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular

investigations unnecessary. Strickland at 689-91.

In the case at bar, Petitioner claims that his entire defense strategy was structured around the belief that the prosecution would not be able to prove "willfulness" beyond reasonable doubt as to Count Thirteen, to wit, the alleged violation of Title 31 U.S.C. § 5324 and that, had it not been for this oversight on the part of his counsel, he would have pled guilty instead of going to trial. See Docket #3. In support thereof, Petitioner points to Ratzlaf v. U.S., 510 U.S. 135 (1994), where the Supreme Court held that to prove a Title 31 U.S.C. § 5324 (structuring money transactions) violation, the government had to prove that defendant knew his conduct was unlawful. However, the statute was later amended and willfulness was no longer required to prove the aforementioned violation. See Aversa v. U.S., 99 F.3d 1200, 1205 (1st Cir. 1996). Petitioner avers that, had he been aware of said amendments, he would have been prepared to make an informed decision about whether or not to proceed to trial, thus his counsel's failure to investigate the applicable law resulted in a serious error.

In its opposition, the Government argues that "other than the petitioner's self-serving, bald assertion...there is nothing on the record to suggest that [he] would have pled guilty," since "he never filed a change-of-plea motion, or informed the court of a specific desire to plea, or inform the court that the parties were close to an agreement." Docket # 9 at 4. The Government also points out that, in the original case, the district court explicitly set forth the statutory text, which did not include willfulness as a requisite element and this should have alerted Petitioner as to the constitutive elements of his offense. Crim. No. 03-216 (SEC), Docket # 45 at 6-10.

Upon reviewing the record, this Court notes that as the Government points out, a preliminary agreement was negotiated with Petitioner, which he signed on April 28, 2003. Docket # 9-2. Said document clearly states that neither party was bound to reach a cooperation agreement, and that the Department of Justice reserved the right to determine

unilaterally if Petitioner was entitled to any consideration. Moreover, Petitioner was only entitled to direct use immunity if he abided by the terms of the agreement, but Petitioner breached the terms and was informed of the Government's withdrawal of the agreement via letter dated June 9, 2003. See Docket #9-3.  Moreover, tuture attempts to negotiate a plea deal were unsuccessful (see Crim. No. 03-216 (SEC), Docket #47), and in fact, neither FBI agents nor Petitioner's attorney were able to contact Petitioner regarding the alleged breach of the preliminary agreement (See Docket #9-3).

Furthermore, the record does not show that Petitioner even moved to change his plea, had an effective desire to do so, or that he manifested this desire openly. Even though he had an opportunity to address the Court, he chose not to, and he never mentioned his counsel's alleged deficiencies.  Crim. No. 03-216 (SEC), Docket # 121.

Lastly, as the Government correctly argues, the element of "willfulness" is only relevant  to Petitioner's conviction under Count Thirteen for money structuring, that is, one count out of thirteen; Petitioner was convicted of twelve additional counts. Therefore, it is highly unlikely that it would have made much of a difference in the overall sentence in light of the evidence against Petitioner on all other counts. Accordingly, even if counsel erred on this point, this mistake was not ultimately prejudicial enough to change the results of the proceedings.

2) *Failure to inform Petitioner of his right to testify during trial*

Petitioner 's further avers that his counsel violated his Fifth Amendment right to testify in his own defense. Attached to Petitioner's § 2255 motion is a sworn affidavit where Petitioner states that he never waived his right to testify, nor advised his attorney that he would not testify during the trial. Docket # 3.  According to Petitioner, he believed that his sole option was to proceed to trial and testify. He further  avers that throughout the trial he was under the impression that he would testify, and that, if allowed to testify, he would have explained to the jury that he had not embezzled the funds, but instead sought to repay loans

he made to FUPO.

In opposition, the Government contends that Petitioner has failed to overcome the presumption that the decision not to testify was part of sound trial strategy, especially given the overwhelming amount of evidence against him. Accordingly, the Government argues that Petitioner did not testify because it would have contradicted counsel's efforts and success in suppressing incriminating evidence. According to the Government, if Petitioner testified, his own testimony could have adversely affected the case.

Petitioner's right to testify is protected by the Fourteenth Amendment's due process guarantee, the Sixth Amendment's right to call witnesses in one's favor, and the Fifth Amendment's guarantee against compelled testimony. See Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007) (finding that the "defendant has a 'fundamental constitutional' right to testify in his own defense...") (quoting Rock v. Arkansas, 483 U.S. 44, 51-53 (1987)). Only the defendant can waive his or her right to testify since it is guaranteed by the Constitution. Owens, 483 F.3d at 58 (holding that "[t]he right to testify may not be waived by counsel acting alone.") (citing United States v. Mullins, 315 F.3d 449, 454 (5th Cir.2002)). Counsel plays a fundamental role in advising the client in this respect, since the court "is not required to apprise a defendant of his right to testify or inquire whether he has waived it." Id.

While failing to inform the client of his right to testify could be prejudicial and a violation of his constitutional rights, Owens, 483 F.3d at 58, from the evidence before this Court, this is not Petitioner's case. Rather, counsel's decision not to put Petitioner on the stand appears consistent with a sound trial strategy. Strickland, 466 U.S. at 689 (holding that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Pina v. Maloney, 565 F.3d 48, 55 (1st Cir.2009).

It is not this Court's role to second guess informed decisions, or strategic choices of counsel reached after careful consideration, and which are the product of an attorney's

professional judgment. Strickland, 466 U.S. at 681. In an ineffective assistance of counsel claim, the main inquiry in evaluating counsel's performance is "whether counsel's assistance was reasonable considering all the circumstances," id. at 688, and taking into consideration the facts of the case and overwhelming evidence against him, Petitioner's counsel's actions were not unreasonable.

Moreover, Petitioner was given the opportunity to address the Court at his sentencing hearing[1] but did not do so, neither did he mention any disagreement between him and counsel that would have led the Court to believe that he wished to testify. Petitioner's silence and failure to protest when it was apparent that counsel would not call him to the stand can be seen as Petitioner's acquiescence to counsel's strategy and constitutes a waiver of this right to testify. See Winfiedl v. Roper, 460 F.3d 1026, 1035 (8th Cir.2006) (holding that waiver of that right [to testify] is properly found where... defendant did not object when his counsel rested without calling him to testify.")(citing United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir.1987)).  Although Petitioner claims that counsel failed to put him on the stand, it is uncontested that he was present during trial and aware of the status of the proceedings. Therefore, Petitioner had ample opportunity to protest his counsel's actions before the conclusion of the trial. Insofar as the decision not to testify seems to stem from counsel's trial strategy, and Petitioner failed to contest this decision at any time during trial, this Court is not persuaded by Petitioner's arguments at this juncture.

Additionally, even if this Court were to find that counsel was deficient in its performance, the record indicates that Petitioner suffered no prejudice from counsel's defense. In Morales-Rodriguez, 467 F.3d 1, the First Circuit examined the evidence presented at trial, and discussed in detail the strength of the evidence available to sustain Petitioner's conviction. Similarly, we find no prejudice in that Petitioner did not testify.

---

[1] The Court asked Petitioner's counsel **twice** if Petitioner wished to address the Court; the answer both times was in the negative.

Although Petitioner avers that he would have explained his non-involvement in the case, his allegations that he was merely repaying the loan he made to FUPO do not explain the withdrawal of over $2.4 million of FUPO funds which are still unaccounted for. It is highly unlikely that Petitioner would have been able to explain such massive difference without further incriminating himself.

Considering the First Circuit's holding in Morales-Rodriguez, and the overwhelming evidence against Petitioner, this Court fails to see how Petitioner was prejudiced by the errors he claims counsel committed.  See Winfield, 460 F.3d at 1035 (holding that defendant had suffered no prejudice despite counsel's failure to call him at trial).

*3) Failure to present prepared witnesses and to object to Jaime Morales' testimony*

According to Petitioner, his counsel failed to present the testimony of three (3) FUPO members who were allegedly willing to testify that they had received all of the services contracted through FUPO, despite the fact that said witnesses were duly identified and notified to counsel. Docket # 3 at 28-29. In contrast, the Government contends that the proffered testimony of three members who allegedly received FUPO benefits could not counteract the thousands of members[2] who did not receive them. See Morales -Rodriguez at 5-16; Docket #9 at 11. Taking Strickland into account, this Court finds that the testimony of Petitioner's three witnesses would not have affected the final sentencing decision and the application of the sentencing guidelines, since the number of victims would have remained above the level of 50. See Crim. No. 03-216 (SEC), Docket #121 at 11.

Petitioner also claims that FBI Agent, Felix Rivera, advised Jaime Morales about testifying during trial. Specifically, Petitioner alleges that Rivera intimidated Morales by threatening that he would face criminal charges if he did not testify in accordance with the Government's orders. According to Petitioner, Morales brought the matter to the Court's

---

[2] FUPO's membership reached approximately 18,000. See Morales-Rodriguez, 467 F.3d at 5.

attention in chambers but an order of silence was issued regarding this issue. Docket # 3 at 29-30.

The Government points out that Morales' testimony was not central to the prosecution's case and would not have undermined the "overwhelming evidence" against Petitioner. Docket # 9 at 12. This Court agrees. Even more, it is well-settled that, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." U.S. v. Jiminez, 498 F.3d 82, 88 (1st Cir. 2007) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). Petitioner's arguments regarding his counsel's alleged failure to present witnesses and to object to Morales' testimony are factually undeveloped, and mostly rest on discussions of the applicable law without specific references to the trial record.

4) *Failure to advise Petitioner on application of guidelines*

Petitioner also claims that counsel misled him as to the application of the Federal Sentencing Guidelines, the relevant conduct applications, and the mitigation of sentence. According to Petitioner, his counsel never advised him regarding the application of the United States Sentencing Guidelines; in particular, "victim/loss" enhancements and enhancement for breach of public trust. Docket # 3 at 31. Petitioner claims that his decision to proceed to trial was influenced by this lack of information since, if he pled guilty, he would have been subjected to a guideline range of 70-87 months incarceration at minimum. Id. at 32-33.

In their opposition, the Government argues that, even in the unlikely event that counsel did not advise Petitioner of the possible sentencing outcome, this does not merit vacating his sentence. Docket # 9 at 6; (See *e.g.* U.S. v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000, which held that "[a] defendant's miscalculation, even a gross miscalculation, regarding the likely length of his sentence does not render a guilty plea unknowing, involuntary, or unintelligent in any legally cognizable sense."). Additionally, they once again point to

Petitioner's failure to adequately show that he would have pled guilty at all but for his counsel's alleged deficient performance. Docket # 9 at 4.

Upon reviewing the record, this Court notes that Petitioner's sentence does not exceed the mandatory range at the time. Although the maximum sentence was imposed, that is, one hundred twenty-one months, the trial court has ample discretion to apply a sentence within the range set forth by the guidelines. Thus even if counsel's misinformation was sound strategy, it is unlikely that the outcome of the trial or the sentence imposed would be different. There is nothing in the record that indicates that Petitioner would have been granted a substantially more lenient sentence if he had pled guilty and avoided trial, nor if his counsel had advised him further about the sentencing guidelines.

*5) Booker violations*

Lastly, Petitioner contends that his counsel failed to argue on appeal that his sentence was imposed under a mandatory guideline range in violation of U.S. v. Booker, 543 U.S. 220 (2005). It is uncontested that his counsel did not address this issue on appeal. See Morales-Rodriguez, 467 F.3d at 16.

When asserting a Booker violation because the district court treated the guidelines as mandatory, the defendant must show that there is "a reasonable probability [that] the sentencing judge would, in a non-mandatory Guidelines system, have imposed a more lenient sentence." United States v. Ortiz-Torres, 449 F.3d 61, 81 (1st Cir. P.R. 2006) (citing United States v. Ayala-Pizarro, 407 F.3d 25, 29 (1st Cir. 2005)). Although the First Circuit is not overly demanding on this front, it has held that "the mere assertion that the district court would have imposed a more favorable sentence is insufficient." Id. Instead, the defendant must "present 'specific facts' to justify a Booker remand." Id. (citations omitted). Here, Petitioner does not set forth any specific facts he would offer on remand that would justify a more lenient sentence. In light of the overwhelming evidence against him, upon which the First Circuit affirmed his sentence, and the fact that he was convicted on all thirteen counts,

this Court is not persuaded by Petitioner's arguments on this front.

### Certificate of Appealability

Pursuant to Section 2255, Petitioner cannot appeal unless a circuit judge, or a district judge issues a certificate of appealability under 28 U.S.C. 2253(c). In order to obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). This, in turn, requires that petitioner "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 337 ( 2003)(citing Barefoot v. Estelle, 463 U.S. 880 (1983)(quotations omitted); see also Smith v. U.S., 989 F. Supp. 371, 374 (D. Mass. 1997)(citations omitted); Pérez Vega v. U.S., Civil No. 04-1636, 2006 WL 752999 at *1 (D.P.R. March 22, 2006).

A convict appealing on the grounds of ineffective counsel must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's unreasonably deficient performance there is a reasonable probability that the results of the proceedings would be different. Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); see also Strickland v. Washington, 466 U.S. 668, 687 (1984). This Court understands that Petitioner has not demonstrated that his counsel failed to provide a defense that fell below an objective standard of reasonableness.

Therefore, insofar as Petitioner failed to make "a substantial showing of the denial of a constitutional right" under 28 U.S.C. §2253(c)(2), he did not show that reasonable jurists could debate whether the petition should have been resolved in a different manner, Petitioner's certificate of appealability is **DENIED**.

### Conclusion

Based on the foregoing, Petitioner's Section 2255 petition is **DENIED**, and the instant case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of September, 2010.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge